**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Diane Mann, as Trustee for the Estate of LeapSource, Inc., et al. | ) ) ) ) | |
| Plaintiffs, | ) ) | No. CIV 02-2099-PHX RCB |
| vs. | ) ) | O R D E R |
| GTCR Golder Rauner, L.L.C., a Delaware limited liability company, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

This matter arises out of an adversary proceeding filed in the bankruptcy of Debtor LeapSource, Inc. ("LeapSource") by Trustee Diane Mann originally against Defendants ICG Group, Inc. ("ICG Group"), Michael Makings, and Jane Doe Makings for the avoidance of a transaction alleged to be a fraudulent conveyance, or alternatively, a preferential transfer pursuant to 11 U.S.C. §§ 547, 548, 500. Mann v. ICG Group, Inc. (In re LeapSource), Adv. No. 02-1202 PHX JMM (Bankr. D. Ariz. 2002) (doc. 1). The case was

withdrawn to this Court under case, CIV-02-2325-PHX-RCB, and consolidated into related case, CIV-02-2099-PHX-RCB. Orders (doc. 60, 68); Mann v. ICG Group, Inc. (In re LeapSource), Adv. No. 02-1202 PHX JMM (Bankr. D. Ariz. 2002) (doc. 3, 5); Mann v. ICG Group, Inc. (In re LeapSource), No. CIV 02-2325 PHX RCB (D. Ariz. 2002) (doc. 1-5). On January 20, 2006, the Trustee filed an Amended Complaint ("Amend. Complt."), naming ICG Group as a defendant with respect to the claim of preferential transfer. Amend. Complt. (doc. 310). In the Amended Complaint, Plaintiffs also named Marcia Makings as a defendant solely for purposes of binding Makings' marital community. Amend. Complt. (doc. 310) at ¶ 5.

Currently pending before the Court is a Rule 12(b)(6) motion to dismiss by Defendants ICG Group and Marcia Makings. Mot. (doc. 316). The Trustee filed a response (doc. 330) on March 1, 2006, Defendants filed a reply (doc. 338) on March 9, 2006, and the Court heard oral argument on July 31, 2006. (doc. 415). Having carefully considered the arguments presented by the parties, the Court now rules.

**I.   BACKGROUND**

ICG Group provides consulting services to large corporations to help them integrate their financial and accounting systems. PSOF (doc. 313) at ¶ 1; DSOF (doc. 351) at ¶ 1. The ICG business ("ICG") was founded in approximately 1990, and Michael Makings was one of the two co-founders. PSOF at ¶ 2; DSOF at ¶ 2. ICG was owned by Image Consulting Group, Inc., which was later changed to ICG Consulting, Inc. ("ICG Consulting"). Id. At all times prior to the year 2000, Makings was ICG Consulting's 50% shareholder, one of its two directors, and its president. Id.

On January 1, 2000, LeapSource purchased the ICG business from ICG Consulting for $10 million. PSOF (doc. 313) at ¶ 3; DSOF (doc. 351) at ¶ 3. Debtor paid $5 million in cash (including $2.5 million to Makings and $2.5 million to his partner) and delivered $5 million worth of promissory notes, including a $2.5 million Promissory Note to ICG Consulting (the "Note"), which it assigned to Makings. Id.

After its acquisition of the ICG business, LeapSource hired Makings as an employee.[1] PSOF (doc. 313) at ¶ 4; DSOF (doc. 351) at ¶ 4. Makings also became a shareholder of LeapSource, but continued to operate the ICG business, integrating it into LeapSource as a division of LeapSource, and conducting sales and marketing activities for LeapSource on other accounts related to ICG. Id.

In January of 2001, Makings accelerated the entire balance owed on the Note, $2.5 million plus interest, due to Debtor's default. PSOF (doc. 313) at ¶ 5; DSOF (doc. 351) at ¶ 5. Thereafter, in early March 2001, Makings began planning a reacquisition of ICG. PSOF (doc. 313) at ¶ 6. On March 16, 2001, Makings incorporated a new entity, ICG Group, and has been at all times ICG Group's sole shareholder and sole director. Id.; DSOF (doc. 351) at ¶ 6.

On March 20, 2001, Makings formally resigned as the CEO and as a director of Debtor. PSOF (doc. 313) at ¶ 7; DSOF (doc. 351) at ¶

---

[1] The parties dispute whether, in October of 2000, LeapSource made Makings its Chief Operating Officer; however, they agree that on or before February 27, 2001, Makings was named CEO and made a director. PSOF (doc. 313) at ¶ 4; DSOF (doc. 351) at ¶ 4.

1  7.  On March 29, 2001, Debtor's board of directors accepted Making's resignation as a director, which was characterized as effective on March 22, 2001.  Id.  Defendants assert, however, that Makings' resignation was effective on March 20, 2001.  DSOF (doc. 351) at ¶ 7.

By Asset Purchase Agreement (the "Agreement") dated March 23, 2001, but allegedly signed on March 30, 2001, Debtor sold its ICG division (the "ICG Asset") to ICG Group.  PSOF (doc. 313) at ¶ 8; DSOF (doc. 351) at ¶ 8.  According to the Agreement, the "purchase price" for the transfer consisted of ICG Group's forgiveness of the Note that Debtor owed to Makings, which he had assigned to ICG Group.  Id.  Additionally, ICG Group also agreed to assume several third party liabilities owned by LeapSource, including telephone lease payments, building lease payments, copier lease payments, various accounts payable, and past and future payroll expenses.  DSOF (doc. 351) at ¶ 8.

Pursuant to the Agreement, the ICG Asset was transferred to ICG Group on March 30, 2001.  PSOF (doc. 313) at ¶ 10; DSOF (doc. 351) at ¶ 11.  ICG Group still owns and operates the ICG Asset under the name ICG Consulting.  PSOF (doc. 313) at ¶ 11; DSOF (doc. 351) at ¶ 12.

On July 11, 2001, LeapSource filed a voluntary chapter 7 petition in the bankruptcy court, and Diane Mann was appointed as Trustee.  In re LeapSource, Inc., No. B 01-9020 PHX JMM (Bankr. D. Ariz. 2001) (doc. 1).  On October 10, 2002, the Trustee initiated this adversary proceeding against Defendants ICG Group and Michael Makings, seeking the avoidance of LeapSource's conveyance of the ICG Asset to ICG Group as an alleged fraudulent or preferential

-4-

transfer pursuant to 11 U.S.C. §§ 547, 548, 550. Mann v. ICG Group, Inc. (In re LeapSource), Adv. No. 02-1202 PHX JMM (Bankr. D. Ariz. 2002) (doc. 1); Exbt. A (doc. 330). The original complaint alleged fraudulent transfer against ICG Group and Michael Makings (Count 1), aiding and abetting a fraudulent transfer against Michael Makings (Count 2), and preferential transfer against Michael Makings (Count 3). Id. The original complaint also named Jane Doe Makings, believed to be Michael Makings' wife, "solely for the purposes of binding Makings' marital community." Id. at ¶ 5.

The Trustee's adversary proceeding was subsequently withdrawn to this Court under case, CIV-02-2325-PHX-RCB, and consolidated into related case, CIV-02-2099-PHX-RCB. Orders (doc. 60, 68); Mann v. ICG Group, Inc. (In re LeapSource), Adv. No. 02-1202 PHX JMM (Bankr. D. Ariz. 2002) (doc. 3, 5); Mann v. ICG Group, Inc. (In re LeapSource), No. CIV 02-2325 PHX RCB (D. Ariz. 2002) (doc. 1-5). No response was ever filed to that action.[2]

---

[2] Rule 15 of the Federal Rules of Civil Procedure applies in bankruptcy adversary proceedings. Fed. R. Bankr. P. 7015. Under Rule 15(a), the Trustee's Amended Complaint (doc. 310) is permitted as a matter of course, because Defendants had not yet filed a pleading responsive to the original complaint. See Fed. R. Civ. P. 15(a) ("A party may amend a party's pleading once as a matter of course at any time before a responsive pleading is served . . . ."). Defendants would apparently have the Court nullify this provision, arguing for the first time in their reply that the entire Amended Complaint (doc. 310) should be barred for reasons of delay and unfair prejudice. Reply (doc. 338) at 3.

Ordinarily, the Court would allow the Trustee an opportunity to file a sur-reply to address this new argument. See Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (holding that where a party introduces new evidence in its reply brief, the district court should not consider the new evidence without giving the non-movant an opportunity to respond); cf. Corson & Gruman Co. v. NLRB, 899 F.2d 47, 50 (D.C. Cir. 1990) (requiring moving party to raise all arguments in its opening brief to prevent "sandbagging" of opposing party). Here, that is not necessary, because Defendants' argument is

On January 20, 2006, the Trustee filed an Amended Complaint, naming ICG Group as an additional defendant with respect to the preferential transfer claim (Count 3), and also naming Marcia Makings, in place of Jane Doe Makings, as a defendant solely for purposes of binding Michael Makings' marital community.  Amend. Complt. (doc. 310) at ¶¶ 5, 31-40.

On February 9, 2006, Defendants ICG Group and Marcia Makings filed a Rule 12(b)(6) motion to dismiss, arguing that the Trustee's amended claims do not relate back to the date of the original complaint as provided under Rule 15(c), and, therefore, are time-barred.  Mot. (doc. 316) at 3-6.

**II.   STANDARD OF REVIEW**

Paragraphs (b) though (h) of Rule 12 of the Federal Rules of Civil Procedure apply in bankruptcy adversary proceedings.  Fed. R. Bankr. P. 7012.  Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to seek dismissal of a claim if the claimant failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Under Rule 12(b)(6), "dismissal for failure to state a claim is improper unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Schowengerdt v. Gen. Dynamics Corp., 823 F.2d 1328, 1332 (9th Cir. 1987) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  Factual argument is

---

wholly unmeritorious and without any basis in law.  Defendants admit that they have not filed a responsive pleading.  See Reply (doc. 338) at 3.  This entitles the Trustee to an amendment as a matter of course.  See Fed. R. Civ. P. 15(a); Fed. R. Bankr. P. 7015.  Because a motion to amend is not before the Court-- indeed, is not even necessary under the circumstances-- Defendants' Rule 15(a) arguments serve no purpose.

- 6 -

inappropriate in a Rule 12(b)(6) motion, which tests only the legal sufficiency of the complaint.  Thus, in undertaking its analysis, a court must limit its "review to the contents of the complaint, accepting the material factual allegations as true and construing them in the light most favorable to the [non-movant]."  Id.

**III. DISCUSSION**

Defendants argue that all of the claims against Marcia Makings, as well as the preferential transfer claim against ICG Group, in the Trustee's Amended Complaint should be dismissed as untimely under the relevant statute of limitations, 11 U.S.C. § 546(a).  Mot. (doc. 316) at 3-6.  Although conceding the timeliness of the original complaint, Defendants contend that the amended claims do not relate back to the date of the original complaint as provided under Rule 15(c), thereby rendering them time-barred.  Id.

Under Rule 15(c), "[a]n amendment of a pleading relates back to the date of the original pleading" in three circumstances.  First, for all amendments, relation back is permitted if specifically contemplated "by the law that provides the statute of limitations applicable to the action."  Fed. R. Civ. P. 15(c)(1).  Second, for amendments to claims or defenses, relation back is permitted if "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  Fed. R. Civ. P. 15(c)(2).  Third, for amendments "chang[ing] the party or the naming of the party against whom a claim is asserted," relation back is permitted if the amended claim is transactionally related to the original pleading, and the party to be brought in by amendment "knew or should have known that, but for a mistake

-7-

1  concerning the identity of the proper party, the action would have
2  been brought against the party."  Fed. R. Civ. P. 15(c)(3).  This
3  requires the plaintiff "to establish that (1) it made a mistake of
4  identity in failing to sue [the party to be brought in by
5  amendment] . . . , and (2) [the party to be brought in by
6  amendment] knew or should have known, by the time the limitation
7  period expired . . . , that [the plaintiff] had made the mistake."
8  Louisiana-Pacific Corp. v. ASARCO, Inc., 5 F.3d 431, 434 (9th Cir.
9  1993) (citation omitted).  In addition, the party to be brought in
10 by amendment must receive timely notice so as "not [to] be
11 prejudiced in maintaining a defense on the merits."  Id.
12      In the present action, the law providing the statute of
13 limitations applicable to the Trustee's claims of fraudulent and
14 preferential transfers does not specifically provide for relation
15 back.  See 11 U.S.C. § 546(a).  Therefore, only the second and
16 third subparts of Rule 15(c) can apply in determining whether the
17 amended claims relate back to the date of the original complaint as
18 to each of the defendants.
19      **A. Relation Back of Amended Complaint as to ICG Group**
20      Defendants argue that there can be no relation back for the
21 preferential transfer claims against ICG Group under the more
22 stringent provisions of Rule 15(c)(3), because the Trustee cannot
23 show that there was ever a mistake as to the identity of ICG Group
24 as a proper defendant.  Mot. (doc. 316) at 5 (citing ASARCO, Inc.,
25 5 F.3d at 434).  Alternatively, Defendants argue that even if Rule
26 15(c)(2) were to apply, relation back should not be allowed as it
27 would unfairly prejudice ICG Group in its ability to maintain its
28 defense.  Reply (doc. 338) at 4.  Both arguments fail.

**1. Rule 15(c)(2) Is the Appropriate Standard**

The Trustee correctly notes that Rule 15(c)(2), and not Rule 15(c)(3), controls here, as ICG was already a defendant in the original action. Resp. (doc. 330) at 6-9. The Court agrees. Because ICG Group was named in the original action, and not introduced for the first time by amendment, Rule 15(c)(2) is the appropriate standard. See Martell v. Trilogy, Ltd., 872 F.2d 322, 324-25 (9th Cir. 1989) (discussing the different standards under Rule 15(c) applicable to amendments "that amend[] the claims against a party already named in the pleading and [those] . . . that amend[] the party to the original pleading"). In their reply, Defendants do not challenge the Trustee's position in this regard. See Reply (doc. 338) at 4.

The decisive inquiry therefore is not whether there was a mistake as to ICG Group's identity, but whether the preferential transfer claim in the amended complaint "arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading." See Fed. R. Civ. P. 15(c)(2). It is without question that the Trustee's preferential transfer allegations concern the same conduct and transaction at issue in the fraudulent transfer claim in the original complaint[3]-- namely, LeapSource's transfer of

---

[3] Ordinarily, when matters outside the pleadings are introduced on a Rule 12(b)(6) motion, and these matters are not excluded by the court, the motion is to be treated as one for summary judgment and disposed of as provided in Rule 56. See Fed. R. Civ. P. 12(b). However, under Rule 201 of the Federal Rules of Evidence, a district court may take judicial notice of "matters of public record" outside the pleadings without converting a motion to dismiss into a motion for summary judgment. MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). The Federal Rules of Evidence apply in bankruptcy adversary proceedings. Fed. R. Bankr. P. 9017. Accordingly, the Court takes judicial notice of the original complaint in Mann v. ICG Group, Inc. (In re LeapSource), Adv. No. 02-

- 9 -

1  the ICG Asset to ICG Group- making relation back appropriate under
2  Rule 15(c)(2).  See Amend. Complt. (doc. 310) at ¶¶ 14-18, 31-40;
3  Exbt. A (doc. 330) at ¶¶ 14-26; see also Mendelsohn v. Mack Fin.
4  Corp. (In re Frank Santora Equip. Corp.), 202 B.R. 543, 545-46
5  (Bankr. E.D.N.Y. 1996) (allowing Trustee's amended claim of
6  fraudulent conveyance to relate back under Rule 15(c)(2) where the
7  original "preference action and the fraudulent conveyance action
8  ar[o]se from the same underlying transaction"); see also Birdsell
9  v. U.S. W. Newvector Group, Inc. (In re Cellular Express of Ariz.),
10 275 B.R. 357, 364 (Bankr. D. Ariz. 2002) ("It's only where there
11 are absolutely no adequately identified transactions in the
12 original complaint that relation back should be denied . . . .").

**2. Avoidance of Prejudice**

Defendants argue in the alternative that, even under Rule 15(c)(2), the Trustee's preferential transfer claim against ICG Group should not relate back to the date of the original complaint because it would be unfairly prejudiced in its ability to maintain its defense.  See Reply (doc. 338) at 4.  The Court rejects this argument also, because the prejudice factor relied upon by Defendants is only relevant to Rule 15(c)(3), which does not apply here.[4]  See Fed. R. Civ. P. 15(c).

---

1202 PHX JMM (Bankr. D. Ariz. 2002) (doc. 1), as a matter of public record having a direct relation to the matters at issue in this case. Fed. R. Evid. 201; Borneo, Inc., 971 F.2d at 248.

[4] Among the prerequisites of relation back under Rule 15(c)(3) is the requirement that, "within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment . . . has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits."  Fed. R. Civ. P. 15(c)(3).  There is no such reference to "prejudice" in Rule 15(c)(2).  See Fed. R. Civ. P. 15(c)(2).

- 10 -

Contrary to the plain meaning of Rule 15(c), Defendants claim that the Ninth Circuit, in <u>ASARCO</u>, somehow broadened the applicability of the prejudice factor so that it would apply under Rule 15(c)(2). <u>See</u> Reply (doc. 338) at 4 ("This 'prejudice' factor is not unique to Rule 15(c)(2) or 15(c)(3) but rather applies to any amended pleading."). This confusion concerning the applicability of <u>ASARCO</u> probably arises from the court's lack of reference to Rule 15(c)(3) in its decision. <u>See</u> <u>ASARCO</u>, 5 F.3d 431. Of course, the reason for that omission is that the version of Rule 15(c) in effect at that time did not contain subparts as the current version does. <u>See</u> Fed. R. Civ. P. 15(c) (1990) (amended 1991). Nevertheless, it is apparent that the <u>ASARCO</u> court's discussion of the prejudice factor was limited to that portion of former Rule 15(c) concerning amendments that introduce new parties, which has since been codified in current Rule 15(c)(3).[5]

---

[5] In <u>ASARCO</u>, the amended pleading at issue was filed in 1989. <u>See</u> <u>ASARCO</u>, 5 F.3d at 433. At that time, the rule regarding relation back of amendments provided in pertinent part as follows:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. <u>An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits</u>, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would

- 11 -


Thus, while the avoidance of prejudice is an express prerequisite for the relation back of amendments introducing new parties, it is not required for amendments introducing new claims against parties named in the original pleading. See Percy v. S.F. Gen. Hosp., 841 F.2d 975, 978 (9th Cir. 1988). Where a new claim is asserted against an existing party, as in the present situation, the district court is not called upon to exercise its discretion to consider prejudice to the defendant. See id. Rather, the court's obligation is to "compare[] the original complaint with the amended complaint and decide[] whether the claim to be added will likely be prove[n] by the same kind of evidence offered in support of the original pleading." Id. (internal quotations omitted). The requirement of transactional relatedness built into Rule 15(c)(2) thus protects the interests of the defendant against whom a new claim is introduced by ensuring that the original complaint put the defendant on sufficient notice of the "particular transaction or set of facts that the plaintiff believes to have caused the complained of injury." See id. at 979.

As noted above, the Trustee's claims of preferential and fraudulent transfer are transactionally related. Both concern LeapSource's transfer of the ICG Asset to ICG Group, and both will

---

have been brought against the party.

Fed. R. Civ. P. 15(c) (1990) (amended 1991) (emphasis added); see also Percy, 841 F.2d at 978 (quoting former Rule 15(c)). Although the ASARCO court did not explicitly say so, it is apparent from the substance of the opinion that it was interpreting and applying the second sentence of former Rule 15(c), because the plaintiff in that case was attempting to sue a new party that had not been named in the original complaint. See ASARCO, 5 F.3d at 434-35; cf. Percy, 841 F.2d at 978 ("The second sentence of Rule 15(c) controls relation back of an amendment that seeks to add a new party.").

be proven largely by the same set of facts. See Amend. Complt. (doc. 310) at ¶¶ 14-18, 31-40; Exbt. A (doc. 330) at ¶¶ 14-26.  In view of the overlapping issues of LeapSource's insolvency and the relative values realized by the parties to the transaction, ICG Group will hardly be "robbed . . . of its rightful discovery" in defending against the preferential transfer claim.  See Reply (doc. 338) at 4; Amend. Complt. (doc. 310) at ¶¶ 14-18, 31-40; Exbt. A (doc. 330) at ¶¶ 14-26; see also Mendelsohn, 202 B.R. at 545-46 (finding "no actual prejudice to the Defendant," because "[t]he Trustee has the same burden of proof to prove its case under Section 547 and 548.").  Because the original complaint specifically identified the ICG Asset transfer as the transaction to be avoided, ICG Group was at that time fairly apprised of the "claims that might follow from the facts alleged by [the Trustee]." See Percy, 841 F.2d at 979; Mendelsohn, 202 B.R. at 546 (noting that an amended "fraudulent conveyance claim stem[ming] from the same basic facts as alleged in the initial complaint[] . . . put the Defendant on sufficient notice so as to permit relation back to the initial date of the complaint."); Birdsell, 275 B.R. at 364. There being no prejudice to Defendants, the Court therefore finds that the preferential transfer claim asserted against ICG Group in the Amended Complaint (doc. 310) relates back to the date of the original complaint under Rule 15(c)(2).

**B. Relation Back of Amended Complaint as to Marcia Makings**

The original complaint named Jane Doe Makings as a party "solely for purposes of binding [Michael] Makings' marital community."  Exbt. A (doc. 330) at ¶ 5.  Similarly, the Amended Complaint names Marcia Makings in her marital capacity for the same

purpose. Amend. Complt. (doc. 310) at ¶ 5. Defendants argue that this amendment should not relate back to the date of the original complaint, because the Trustee cannot show that there was ever a mistake as to Marcia Makings' identity as a proper defendant.[6] Mot. (doc. 316) at 5 (citing <u>ASARCO, Inc.</u>, 5 F.3d at 434). Because the amendment at issue "changes . . . the naming of the party against whom a claim is asserted," the Trustee must show (1) that the claims against Marcia Makings in the Amended Complaint (doc. 310) are transactionally related to the matters set forth in the original complaint, (2) that Marcia Makings has received notice of the action such that she will not be prejudiced in maintaining her defense on the merits, and (3) that Marcia Makings "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against [her]." <u>See</u> Fed. R. Civ. P. 15(c)(3).

Upon review of the original and amended complaints, and the for the reasons explained above, the Court is satisfied that the matters set forth in both are transactionally related. <u>See</u> Amend. Complt. (doc. 310); Exbt. A (doc. 330). Defendants do not contend otherwise.

Similarly, Defendants do not complain of any prejudice arising

---

[6] Defendants also argue that, even if Rule 15(c)(2) applied, the amendment should not relate back as it would unfairly prejudice Marcia Makings' ability to maintain her defense on the merits. Reply (doc. 338) at 4. As Rule 15(c)(3) controls, the Court will not address this second argument. Even if Rule 15(c)(2) were applicable, this argument would be rejected for the same reasons discussed above with regard to ICG Group.

- 14 -

from lack of notice.[7]  Instead, Defendants claim that Marcia Makings "was effectively dismissed when the Adversary Proceeding was consolidated into the GTCR lawsuit," and was thereby prejudiced by her lack of participation in discovery in the related case, Mann v. GTCR Golder Rauner, LLC, CIV 02-2099 PHX RCB (D. Ariz. 2002).[8] Once again, Defendants conflate issues of Rule 15(a) prejudice with Rule 15(c)(3) prejudice.  Although the two are different, and the Rule 15(a) arguments misplaced, Defendants' arguments fail on their merits.  To the extent that Marcia Makings is named solely for the purpose of binding the marital community, Defendants greatly exaggerate the prejudice from her lack of involvement in discovery. See Reply (doc. 338) at 5.  A defendant of such limited capacity is unlikely to hold such pivotal importance that greater participation by her would contribute significantly to the robust discovery that has already taken place in these cases.  Moreover, "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." United States v. Cont'l Ill. Bank & Trust Co. of Chi., 889 F.2d 1248, 1255

---

[7]  Indeed, based on Marcia Makings' filing of the present motion (doc. 316) within one month of the Amended Complaint (doc. 310), it is apparent that she has had such timely notice of the institution of this action such that she would not be prejudiced in her ability to maintain her defense.

[8]  Unusually, this argument would imply that at one point Marcia Makings was actually named as a defendant in the action, and was subsequently dropped as a party.  The Court surmises that Defendants mean that after the withdrawal and consolidation of this adversary proceeding, Jane Doe Makings was somehow omitted as a party, and subsequently failed to appear or participate in this adversary proceeding or the related civil case.  As it happens, the docket sheets for the lead case as well as the present case, Mann v. ICG Group, Inc. (In re LeapSource, Inc.), CIV 02-2325 PHX RCB (D. Ariz. 2002), both reflect the status of Jane Doe Makings as a defendant.

(2d Cir. 1989).

The remaining issue is whether the Trustee made a mistake concerning Marcia Makings' identity when she failed to name her in the original complaint. This requirement has two elements. First, the Trustee must show that she made a mistake of identity in failing to sue Marcia Makings when she sued Jane Doe Makings. Second, the Trustee must show that Marcia Makings knew or should have known that the Trustee had made a mistake in naming Jane Doe Makings instead of her. See ASARCO, 5 F.3d at 434.

As to the first element, in determining whether the Trustee made a mistake of identity, the relevant information is what the Trustee knew or thought she knew when she filed the original complaint. Centuori v. Experian Info. Solutions, Inc., 329 F. Supp. 2d 1133, 1138 (D. Ariz. 2004). Defendants do not make any arguments concerning the Trustee's state of mind at the time of filing the original complaint. Instead, they claim that the Trustee, by conducting discovery prior to filing the adversary proceeding, should have obtained information ostensibly known to LeapSource regarding Marcia Makings' identity as Michael Makings' wife. Mot. (doc. 316) at 5. In addition, Defendants point to events subsequent to the initiation of the adversary proceeding that presumably should have prompted the Trustee to amend sooner. See id. None of this shows that the Trustee, at the time of filing the original complaint, knew or thought she knew the true name or identity of Michael Makings' wife. See Centuori, 329 F. Supp. 2d at 1138. Therefore, the Court accepts the Trustee's assertion that Jane Doe Makings was named due to a mistake of identity as to the proper defendant.

As to the second element, Defendants do not claim that Marcia Makings did not understand that the Trustee's naming of "Jane Doe Makings" in the original complaint referred to her. The original complaint states, "[u]pon information and belief, Jane Doe Makings is Michael Makings' wife and is named as a defendant herein solely for purposes of binding Makings' marital community." Exbt. A (doc. 330) at ¶ 5. Prior to the expiration of the statute of limitations, Marcia Makings knew that she was Michael Makings' wife, and that she would have been named instead of Jane Doe Makings had the Trustee known her true name at that time. All the requirements of Rule 15(c)(3) being met, the Trustee's amendment naming Marcia Makings as a defendant relates back to the date of the original complaint.

**IV.  CONCLUSION**

For the foregoing reasons, the Court finds that the Trustee's Amended Complaint (doc. 310) in its entirety relates back to the date of the original complaint under Rule 15(c) of the Federal Rules of Civil Procedure, rendering all claims timely under 11 U.S.C. § 546(a). Therefore,

IT IS ORDERED that Defendants' Motion to Dismiss (doc. 316) is DENIED.

DATED this 28th day of August, 2006.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record.