**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Diane Mann, as Trustee for the Estate of LeapSource, Inc., et al.<br><br>            Plaintiffs,<br><br>       vs.<br><br>GTCR Golder Rauner, L.L.C., a Delaware limited liability company, et al.,<br><br>            Defendants. | No. CIV 02-2099-PHX RCB<br><br>O R D E R |

On July 31, 2006, the Court heard oral argument on three motions for summary judgment (doc. 250, 255, 457) filed by Kirkland & Ellis ("K&E"). (doc. 415). On August 28, 2006, the Court entered an order granting those motions. Order (doc. 457). Plaintiffs now seek reconsideration of that order. Having carefully considered the arguments raised, the Court now rules.

**I. Background Facts**

On June 11, 2004, Plaintiffs filed their Fourth Amended Complaint ("FAC") (doc. 121), asserting claims against K&E for

tortious interference with contract, tortious interference with prospective economic advantage, breach of fiduciary duties, aiding and abetting breach of fiduciary duty, and professional malpractice.  FAC (doc. 121) ¶¶ 320-23, 332-37, 384-88, 403-09, 414-22, 450-53, 467-73, 481-86.  Many of Plaintiffs' claims against K&E were based at least in part on a theory of vicarious liability for the actions of Defendant David Eaton, who at the time of the events in question maintained an "of counsel" relationship with K&E.  See id.; Defs.' Statement of Facts for Vicarious Liability ("DSOFVL") (doc. 251) ¶ 6.

**A. Creation of LeapSource**

This action was originally filed in the Superior Court of Arizona in Maricopa County, alleging numerous state law based claims arising out of the financial demise of LeapSource, Inc. ("LeapSource").  LeapSource was a Phoenix-based "business process outsourcing" ("BPO") company, formed to provide accounting and employee benefit services to mid-sized businesses.  The defendants in this action include a number of individuals and companies who were involved in various transactions related to the start-up and operation of LeapSource.  GTCR Golder Rauner, LLC, is a Chicago-based venture capital firm.  Beginning in September 1999, three partnerships (GTCR Fund VI, L.P., GTCR VI Executive Fund, L.P., GTCR Associates VI) in which GTCR was a general partner made a series of investments by purchasing stock in LeapSource.

Individual Plaintiff Christine Kirk was recruited by GTCR from her prior position as a partner with Arthur Andersen.  She then recruited fellow Andersen employees to work for LeapSource, including fellow partners, some of whom were also given the

-2-

opportunity to acquire shares of LeapSource.  Between August 30, 1999 and September 14, 1999, Kirk negotiated with GTCR over the terms of the parties' Statement of Understanding.  After exchanging numerous drafts and making a number of changes, the parties executed the final version, dated September 14, 1999.  Thereafter, on September 16, 1999, LeapSource was incorporated--then named "Kirkco, Inc."  At this time, LeapSource had no employees, and its only shareholder other than the above-mentioned GTCR entities was Christine Kirk, LeapSource's start-up CEO.  The parties, plus the other individual Plaintiffs in this action, worked to gradually grow the LeapSource business; however, the company eventually failed and filed for chapter 7 bankruptcy liquidation.

As an introductory matter, the FAC alleges Plaintiffs' claims against Defendants.  These claims are made by different plaintiffs and groups of plaintiffs against various groups of defendants.  For purposes of this order only, plaintiff-subgroups are referred to as the "Trustee" (the bankruptcy trustee), and the "Plaintiffs" or "individual Plaintiffs" referring to Christine Kirk ("Kirk"), Kimberly Hartmann, Julie B. McCollum, Kelly Powers, Indu Gupta, Bobby D. Scott, and Patrice E. Walker, and Thomas Gilman. Defendant-subgroups are referred to as "GTCR" to indicate GTCR Golder Rauner, LLC, GTCR Fund VI, LP, GTCR VI Executive Fund, LP, GTCR Associates VI, Joseph P. Nolan, Bruce V. Rauner, Daniel Yih, David A. Donnini and Philip A. Canfield, and "K&E" to refer to Kirkland and Ellis.

**B. K&E**

K&E is a law firm organized as a limited liability partnership with its principal office located in Illinois.  K&E has represented

GTCR in private equity transactions and investments for well over two decades. During the time when GTCR began negotiating with Kirk over the possibility of forming a BPO company, K&E provided legal advice and assistance to GTCR. In August and September 1999, Kirk understood that GTCR was a long-standing client of K&E.

In April 1999 or earlier, Kirk spoke with Jeff Gilbert, a partner at the Sachnoff & Weaver law firm. The parties dispute whether Sachnoff & Weaver represented Kirk at that time, however, they agree that by late August and early September, Gilbert's partner, Jeff Schumacher, was advising her in connection with the negotiations with GTCR.

In connection with GTCR's investment in LeapSource, K&E prepared documents related to the formation of the company. Kirk's lawyer provided comments to K&E about the draft agreements, including the Purchase Agreement. K&E prepared revised drafts of these documents based on the comments received from Schumacher. In the course of these negotiations, Schumacher explained the agreements to Kirk and answered all of her questions. It is undisputed that Kirk's lawyers at Sachnoff & Weaver understood that K&E represented GTCR only, however Kirk claims that she understood that K&E represented GTCR and LeapSource, concurrently.

During negotiations, Kirk's lawyers raised objections to the language drafted in the documents because they wanted a firmer commitment from GTCR. Specifically, Schumacher contested the use of the words "up to" that described the funding commitment of GTCR in the Purchase Agreement, and was involved in negotiations with GTCR on whether that language should be deleted or replaced with other language that would remove the conditional aspect associated

with the words. Kirk's lawyers fully explained the Purchase Agreement to her before she signed it.

Kirk does not recall meeting any of the K&E attorneys who were representing GTCR on the LeapSource transaction. However, during the negotiations, Kirk spoke with Richard Clyne, a K&E associate, who told her that he would be faxing her materials to sign and return, requested that she provide information for registration forms for the company, advised Kirk that K&E would be forming LeapSource, and that K&E would complete the tax filings required for the corporation. Kirk spoke with Steve Ritchie, a K&E partner, sometime in September 1999, but does not recall any conversations with him thereafter.

A legal assistant or paralegal at K&E prepared and filed the necessary paperwork to form Kirkco as a Delaware corporation on September 16, 1999. However, there is no retainer letter between K&E and LeapSource. Kirk was responsible for retaining counsel for the company, but she cannot identify any conversation or writing in which she officially retained K&E to serve as LeapSource's counsel during the period between September 16 and 27, 1999.

In the fall of 1999, LeapSource retained the law firm Osborn Maledon as its principal outside counsel for transactional and corporate work. In addition to Osborn Maledon, LeapSource hired other law firms to perform legal work, such as the Weinberg Legal Group, for intellectual property matters.

Under Section 7(A) of the Purchase Agreement, Kirkco (later LeapSource) was obligated to pay, among other things, the reasonable fees and expenses incurred by GTCR in connection with the negotiation and execution of the Purchase Agreement and the

1  consummation of the transactions contemplated by the Agreement.
2  See Exbt. 24 (doc. 329) § 7(A).  K&E asserts that, for this reason,
3  it sent certain bills jointly to LeapSource and to GTCR.
4       Additionally, K&E associate Clyne communicated with LeapSource
5  in regard to his preparation of supplements to the Purchase
6  Agreement, and printed out related board consents and stock
7  certificates.  Clyne confirmed with LeapSource's counsel at Osborn
8  Maledon that K&E would continue to perform this work after Osborn
9  Maledon was hired.  Clyne also communicated with Kirk in early
10 October 1999 about a draft offer letter and employment agreement
11 checklist for LeapSource.  K&E performed additional work for
12 LeapSource relating to the company's Harris Bank line of credit,
13 potential WARN Act violations, and the termination of LeapSource
14 officers and employees.  Based on these and other acts, Plaintiffs
15 assert that K&E held an attorney-client relationship with
16 LeapSource.

17      **C. David Eaton and AEG Partners, LLC**

18      David Eaton is a businessman and attorney residing in
19 Illinois.  DSOFVL (doc. 251) ¶ 1; Def.'s Supplemental Statement of
20 Facts for Vicarious Liability ("DSSOFVL") (doc. 369) ¶ 8.  AEG
21 Partners, LLC ("AEG") is an Illinois limited liability company
22 formed in January of 2000 by Eaton and two other businessmen to
23 provide "financial advisory and crisis management for financially
24 distressed companies."  See id. ¶¶ 14, 16; DSSOFVL (doc. 369) ¶ 7.
25      In or about February 2001, K&E partner Kevin Evanich referred
26 Eaton, and Eaton's company, AEG, to GTCR.  DSOFVL (doc. 251) ¶ 17;
27 Exbt. 1 (doc. 285) ¶ 17.  At that time, Eaton held an "of counsel"
28 relationship with K&E pursuant to an agreement dated June 11, 1999.

- 6 -

DSOFVL (doc. 251) ¶ 6; Exbt. 1 (doc. 285) ¶ 6.  Both parties agree that K&E suggested Eaton to GTCR as a "crisis manager" for LeapSource.  Resp. (doc. 292) at 2; Reply (doc. 303) at 3.  Evanich stated in his deposition that he referred Eaton to GTCR because Eaton "was an expert in the financial restructuring advisory business."  Exbt. 4 (doc. 251) at 21:21-22:4.  Thereafter, Eaton met with GTCR at GTCR's offices in Chicago regarding LeapSource. DSOFVL (doc. 251) ¶ 21; Exbt. 1 (doc. 285) ¶ 21.  On February 27, 2001, the LeapSource board of directors voted to retain AEG to offer financial advisory services to LeapSource.  Exbt. 21 (doc. 292) at 2.  According to the LeapSource board minutes, the directors voting in favor of retaining AEG were Bruce Rauner, Dan Yih and Joe Nolan, all GTCR principals, and plaintiff Kirk.[1]  Id. LeapSource and AEG formalized their relationship in an agreement dated March 2, 2001 (the "Letter Agreement").  Id. ¶ 35.  In that agreement, LeapSource and AEG agreed that their relationship would be governed by Illinois law.  DSSOFVL (doc. 369) ¶ 1.  Thereafter, Eaton worked on the LeapSource transactions in both Illinois and Arizona.  Id. ¶ 2.

Plaintiffs assert that Eaton, being "of counsel" with K&E, was obligated to avoid taking any position or action that was adverse to K&E's client, GTCR, and, thus, caused the eventual demise of LeapSource by dissipating LeapSource's assets "in order to accomplish GTCR's objectives of shutting down LeapSource[.]"  Resp.

---

[1] At oral argument, Plaintiffs raised the question as to whether Kirk actually abstained from this vote.  However, the board meeting minutes, included as Exhibit 21 in Plaintiffs' response in opposition to K&E's motion for summary judgement on the aiding and abetting claims (doc. 292), reflect that Kirk voted in favor of retaining AEG.

1  (doc. 292) at 13-16.  Additionally, Plaintiffs contend that Eaton
2  "served GTCR's interests with respect to LeapSource, which included
3  (a) limiting GTCR's downside, (b) avoiding embarrassment, and (c)
4  protecting its interest in other investments, including COMSYS,
5  another company funded by GTCR and a customer of LeapSource."  Id.
6  at 15.

**D. K&E's Motions for Summary Judgment**

Plaintiffs' complaint alleges various causes of action, including claims against K&E based on theories of both direct and vicarious liability, as well as against Eaton and AEG.  On December 2, 2002, K&E filed a Rule 12(b)(6) motion to dismiss arguing, inter alia, that it cannot be vicariously liable for Eaton's conduct, as Eaton did not act in his "of counsel" role with K&E during the provision of AEG's services to LeapSource.  Mot. (doc. 10) at 15.  While observing that the relevant cases favored K&E's position, the Court determined that dismissal prior to an adequate opportunity for fact discovery would be premature, and denied the motion on September 30, 2003.  See Order (doc. 69) at 12-17.  Discovery was conducted and, on September 8, 2005, K&E filed its Motion for Summary Judgment Regarding Vicarious Liability.  Mot. Vicarious Liability (doc. 250).

Between December 26, 2005 and January 6, 2006, the Trustee and Plaintiffs entered into an agreement with Eaton and AEG for the settlement and release of all their claims (the "Settlement Agreement").  See Exbt. 1 (doc. 404).  A choice of law provision in that agreement indicated the parties' intent that the agreement "shall be governed, construed and enforced according to the laws of the State of Arizona without regard to conflicts of laws

- 8 -

principles." Exbt. 3 (doc. 369) ¶ 14.  Of particular relevance to K&E's motion for summary judgment regarding vicarious liability (doc. 250, 368), the parties also included language in the Settlement Agreement by which the Trustee and Plaintiffs purported to reserve their claims against K&E based on the firm's vicarious liability for Eaton's conduct, notwithstanding their release of Eaton.[2]

After the settlement, the following events unfolded in the LeapSource bankruptcy proceedings.  On January 13, 2006, the

---

[2] The paragraph of the Settlement Agreement entitled "Release of AEG" provides in pertinent part as follows:

> [T]he Trustee . . . and Plaintiffs, hereby release, acquit, and forever discharge AEG, . . . and each and every one of their past and present . . . shareholders, members, officers, directors, partners, principals, agents, . . . and attorneys from any and all claims, causes of action, . . . that the Trustee's bankruptcy estate and Plaintiffs may have had or claimed to have had in the past . . . against AEG . . . ; provided, however, that the Trustee and Plaintiffs do not release and expressly reserve any Claims that she (in her capacity as Trustee) and Plaintiffs might have or claim to have against any person or entity other than AEG, including, without limitation, the various persons and entities named as defendants or adverse parties in the Litigation or in any adversary proceeding in which the Trustee is or has been the plaintiff or other party asserting a Claim, that currently is pending in the U.S. District Court or the Bankruptcy Court, and that arises from or relates to the Litigation or the Debtor, including without limitation, the Other Defendants, <u>regardless of whether AEG on the one hand, and any one or more of the Other Defendants, on the other hand, are or may be alleged to be principals, agents, or joint tortfeasors as to one or more of the Trustee's reserved alleged Claims.</u>

Exbt. 1 (doc. 404) (emphasis added).

1 Trustee and Plaintiffs filed a motion in the bankruptcy court
2 requesting the bankruptcy judge to enter an order authorizing and
3 approving their settlement with Eaton and AEG.  In re LeapSource,
4 Inc., No. B 01-09020 PHX JMM (Bankr. D. Ariz. 2001) (doc. 159).  On
5 February 2, 2006, K&E filed a Notice of Reservation of Rights,
6 agreeing to the terms of the proposed settlement in the bankruptcy
7 proceedings, but "specifically reserv[ing] all of its rights,
8 claims, defenses, and/or other interests regarding the
9 interpretation of th[e] settlement agreement by the District
10 Court."  Id. (doc. 162).  On April 6, 2006, the bankruptcy court
11 entered an order authorizing and approving the settlement on the
12 terms of the Trustee's motion.  Id. (doc. 172).

13     On October 7, 2005, during the briefing of K&E's motion for
14 summary judgment regarding vicarious liability (doc. 250),
15 Plaintiffs filed notice of their settlement with Eaton and AEG.
16 Notice (doc. 259).  Thereafter, on April 17, 2006, K&E filed a
17 supplement to its motion for summary judgment (doc. 250), arguing
18 that Plaintiffs' release of Eaton also operated as a release of K&E
19 from any vicarious liability for Eaton's conduct.  Supplement (doc.
20 368).

21     Additionally, on October 3, 2005, K&E filed a motion for
22 summary judgment on the aiding and abetting and tortious
23 interference claims (Counts 1, 12, 14, 18, 21, and 23).  Mot. Aid.
24 & Abett.  (doc. 255).  This motion was fully briefed on December
25 12, 2005.  Reply (doc. 303).  Thereafter, on March 28, 2006, the
26 Court granted summary judgment in favor of K&E on Counts 12 and 14.

Order (doc. 356).³  Thus, the Court indicated that it would consider K&E's motion for summary judgment on the aiding and abetting and tortious interference claims only in regard to Counts 1, 18, 21 and 23.

On February 27, 2006, K&E also filed a motion for summary judgment on the malpractice and professional negligence claim (Count 10). Mot. Malprac. (doc. 328). This motion was fully briefed on May 22, 2006. Reply (doc. 406).

The Court heard oral argument on K&E's motions on July 31, 2006. (doc. 415). On August, 28, 2006, the Court issued an order granting those motions.

**II.  DISCUSSION**

Plaintiffs argue that the Court, on reconsideration of its August 28, 2006 order (doc. 457), should deny K&E's supplemented motion for summary judgment regarding vicarious liability (doc. 250, 368), K&E's motion for summary judgment on the aiding and abetting and tortious interference claims (Counts 1, 18, 21, 23) (doc. 255), and K&E's motion for summary judgment on the malpractice and professional negligence claim (Count 10) (doc. 328). Mot. (doc. 462).

The decision to grant or deny a motion for reconsideration is left to the sound discretion of the trial court. See Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). Such motions are disfavored and, absent exceptional

---

³ The Court notes that the order language of its March 28, 2006 Order mistakenly states that K&E's motion for summary judgment on "Counts 12 and 13" was granted, however, within the body of the order it is clear that the subject motion and the Court's decision were in relation to Counts 12 and 14. Order (doc. 356) at 2, 40-41.

- 11 -

circumstances, are generally only appropriate "if the district court (1) is presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in controlling law." Id. In order to prove that the Court committed clear error, Plaintiffs must demonstrate that the Court's action fell clearly outside the bounds of its authority. See McDowell v. Calerdon, 197 F.3d 1253, 1256 (9th Cir. 1999). If the propriety of the Court's judgment is a debatable question, there is no clear error and the motion to reconsider is properly denied. Id.

**A. K&E's Motion for Summary Judgment Regarding Vicarious Liability**

On its motion for summary judgment, K&E maintained that Plaintiffs' release of Eaton also released K&E from any vicarious liability for Eaton's conduct-- this notwithstanding language in Plaintiffs' Settlement Agreement with Eaton purporting to reserve claims based on K&E's vicarious liability. K&E argued, and the Court agreed, that the attempted reservation of rights was invalid under Illinois law. Plaintiffs insisted that under Arizona law, adopted by the Settlement Agreement's choice of law provision, the release of the agent does not release the principal from vicarious liability for the agent's conduct. Applying conflicts of laws principles, the Court found that Illinois law should apply notwithstanding the choice of law provision. Alternatively, the Court pointed out that even under Arizona law, as presented in Plaintiffs' response to K&E's motion, the result appeared to be the same as K&E had argued it would be under Illinois law. Thus, the Court concluded that Plaintiff's release of Eaton also released

- 12 -

Eaton's principal, K&E, from any vicarious liability for Eaton's conduct, and granted K&E's motion for summary judgment regarding vicarious liability.

Plaintiffs argue that the Court's ruling was clearly erroneous, chiefly because Plaintiffs still believe that K&E's motion for summary judgment constituted a collateral attack on the bankruptcy judge's order approving the Settlement Agreement. Mot. (doc. 462) at 2-4. The Court rejected this argument the first time Plaintiffs' raised it in their response to K&E's motion for summary judgment. See Order (doc. 457) at 19 n.5. As the Court explained then, K&E's notice of reservation of rights sufficiently informed Plaintiffs of K&E's objection to the Settlement Agreement's purported affect on its rights in this litigation, and properly reserved its right to have those issues decided by this Court, rather than the bankruptcy judge. Id. In concluding that K&E's motion did not constitute an impermissible collateral attack, the Court noted that it had not been asked to disturb the bankruptcy court's decision with regard to the claims in the bankruptcy case, but only to determine the effect of the Settlement Agreement on the claims in this case. Id.

Nowhere in their motion do Plaintiffs directly challenge the Court's reasons for rejecting their collateral attack argument. Rather, Plaintiffs seem to believe that K&E's reservation of rights was either not explicit enough, or that this Court exceeded its authority in interpreting the terms of the agreement as it did. Mot. (doc. 462) at 2-4. As Plaintiffs see it, K&E only reserved the right to have this Court interpret the Settlement Agreement, the "express provisions" of which they believe were so clear as to

1  defy any need for interpretation by this Court.  Id.
2      These arguments have no merit.  As the Court explained before,
3  K&E's notice of reservation of rights put Plaintiffs on notice that
4  (1) K&E agreed to the terms of the Settlement Agreement only in the
5  bankruptcy proceedings, and (2) that the purported effect of the
6  Settlement Agreement's terms on K&E's rights in this litigation
7  would be decided by this Court.  Order (doc. 457) at 19 n.5.
8  Moreover, the Court's interpretation of the choice of law provision
9  was not only within the bounds of its authority, but also in
10 accordance with the Supreme Court of Arizona's view that courts
11 should apply conflicts of laws principles even in the face of
12 contractual choice of law provisions, as the one employed by
13 Plaintiffs here, which purport to preclude the courts from engaging
14 such analysis.  See id. at 13-15 (citing Jackson v. Chandler, 61
15 P.3d 17 (Ariz. 2003), Swanson v. Image Bank, Inc., 77 P.3d 439, 441
16 n.2 (Ariz. 2003), and Magellan Real Estate Inv. Trust v. Losch, 109
17 F. Supp. 2d 1144, 1155 (D. Ariz. 2000)).  In short, Plaintiffs have
18 not demonstrated that the Court exceeded its authority or rendered
19 a clearly erroneous decision.
20     While Plaintiffs have not argued for reconsideration based on
21 newly discovered evidence or an intervening change in controlling
22 law, they do raise one argument based on newly discovered law.
23 This is where counsel fails to make a legal argument during the
24 briefing of the underlying motion, and later attempts to bring new
25 authority to the Court's attention when asking for reconsideration.
26 In their motion for reconsideration, Plaintiffs for the first time
27 bring Ariz. Rev. Stat. § 12-2504 to the fore to tell the Court that
28 it was in error for its citation to Faberberg v. Phoenix Flour

Mills Co., 71 P.2d 1022 (Ariz. 1937), for the proposition that the release of one joint tortfeasor is a release of all. Plaintiffs claim that the statute, enacted in 1984, changed the rule of Faberberg. It is worth remembering the reason for the Court's citation to Faberberg. Plaintiffs relied on Faberberg, not Ariz. Rev. Stat. § 12-2504, in opposing K&E's motion for summary judgment. If Faberberg is so sadly out of date, as Plaintiffs now suggest, they would have been well advised to eschew that case and simply cite the statute. Had they done so, they might have avoided the fact that the Court discovered on its own that the case went against their position.[4] In any event, Arizona law is of no consequence here, as the Court has explained twice now why K&E's motion for summary judgment did not constitute a collateral attack on the bankruptcy judge's order, and why conflicts of laws principles dictate that Illinois law must apply in this situation. The arguments presented have not demonstrated clear error in the Court's judgment. Therefore, Plaintiffs' motion for reconsideration of the Court's order granting K&E's supplemented

---

[4] Plaintiffs cited Faberberg for the proposition that "[c]ovenants not to sue should be construed in harmony with the intent of the parties." Plaintiffs suggested that the same principle should guide the Court to honor the intent of Plaintiffs and Eaton, as expressed in their Settlement Agreement, to preserve Plaintiffs claims against K&E based on its vicarious liability for Eaton's conduct notwithstanding Eaton's release. On reviewing Faberberg, the Court discovered that the case actually held that a settlement agreement releasing one joint-tortfeasor was an effective release of all, and that the covenant not to sue, presumably entered into prior to any litigation, was an exception to that general rule. Because Plaintiffs had entered into a settlement agreement, rather than a covenant not to sue, it occurred to the Court that the general rule would be more applicable to the situation at hand, i.e., that the attempted preservation of claims would be invalid.

motion for summary judgment regarding vicarious liability will be denied.

**B. K&E's Motions for Summary Judgment Regarding Aiding and Abetting and Tortious Interference Claims, and Malpractice and Professional Negligence**

Upon careful review of the arguments raised, the Court has determined that further briefing may be beneficial to the resolution of Plaintiffs' motion to the extent that Plaintiff seeks reconsideration of the Court's order (doc. 457) granting K&E's motions for summary judgment regarding aiding and abetting and tortious interference claims (doc. 255), and malpractice and professional negligence (doc. 328).

Of particular interest to the Court are Plaintiffs' arguments concerning K&E's conduct beyond its recommendation of David Eaton's services to LeapSource, Inc. ("LeapSource"). See id. at 8:10-21 (citing Pls.' Statement of Additional Facts ("PSOAF") (doc. 292) ¶¶ 30, 69, 71, 86, 97-99, 102, 119, 123, 125, 127-28, 137, 143, 149). Although raised initially in Plaintiffs' response to K&E's underlying motion for summary judgment, see Resp. (doc. 292) at 3:6-11, 5:2-6, 7:9-11, neither K&E's reply (doc. 303) nor the parties' arguments at the July 31, 2006 hearing touched significantly upon any of those issues.  While it would have been desirable for these issues to have been fully developed in the earlier briefing and hearing, the Court understands that the parties may not have anticipated their significance at that time. Not knowing then whether the Court would grant K&E's motion for summary judgment regarding vicarious liability, thereby extinguishing the firm's vicarious liability for Eaton's conduct, the parties might not have known the importance that would attach

to K&E's other conduct-- apart from its recommendation of Eaton and apart from the actions of Eaton himself.  Thus, the Court does not fault Plaintiffs for not presenting those arguments more forcefully in their response, or blame K&E for misunderstanding Plaintiffs as complaining only of K&E's recommendation of Eaton, see Reply (doc. 303) at 2:2-4, 3:5-6, 5:7-8.  Of course, in light of Plaintiffs' present motion, it would be helpful to know the parties' positions now.

The Court will therefore allow K&E to file a response to Plaintiffs' motion for reconsideration (doc. 462).  If K&E files a response, Plaintiffs may file a reply.  In their briefing, the parties are advised to focus primarily on the issues discussed in this order.  See Mot (doc. 462) at 8:10-21 (citing PSOAF (doc. 292) ¶¶ 30, 69, 71, 86, 97-99, 102, 119, 123, 125, 127-28, 137, 143, 149); Resp. (doc. 292) at 3:6-11, 5:2-6, 7:9-11.

Therefore,

IT IS ORDERED that Plaintiffs' motion for reconsideration (doc. 462) is DENIED in part.  Plaintiffs' motion for reconsideration is denied with respect to the Court's order (doc. 457) granting K&E's supplemented motion for vicarious liability (doc. 250).  To the extent that Plaintiffs' motion also seeks reconsideration of the Court's order (doc. 457) granting K&E's motions for summary judgment regarding aiding and abetting and tortious interference claims (doc. 255), and malpractice and professional negligence (doc. 328), the motion shall remain under advisement pending further briefing contemplated by this order.

IT IS FURTHER ORDERED that K&E shall have until no later than twenty (20) days after the date of entry of this order to serve and

file a response in opposition to Plaintiffs' motion for reconsideration (doc. 462), such response to focus primarily on the issues discussed in Part II.B of this order.

IT IS FURTHER ORDERED that, in the event that K&E files a response to Plaintiffs' motion for reconsideration (doc. 462), Plaintiffs shall have until no later than twenty (20) days after the date such response is filed to serve and file a reply in support of their motion, such reply to focus primarily on the issues discussed in Part II.B of this order.

DATED this 1st day of December, 2006.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record.